**Richard H. AUSTIN**

v.

**Ricky BELL, Warden.**

No. 3:86–0293.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 26, 1996.

---

Larry D. Woods, Michelle Denise Collins, Nashville, TN, for petitioner.

Glenn Richard Pruden, Office of the Attorney General, Nashville, TN, for respondent.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court in the above-styled case is Petitioner's Motion for Summary Judgment (Doc. No. 146). Petitioner Austin asserts that there are no issues of material fact and that he is entitled to judgment as a matter of law. Petitioner moves this Court to issue the writ of habeas corpus unless the State grants him a new trial at which the State is required to prove its case beyond a reasonable doubt, the jury is required to decide the case on its factual merits, and Mr. Austin is sentenced in a manner consistent with the law.

For the reasons stated below, the Court partially grants Petitioner's motion for summary judgment. The Court grants Petitioner's motion with respect to his claims regarding constitutional defects in the jury instructions and ineffective assistance of counsel.

## I. BACKGROUND

Petitioner Richard Austin was indicted and tried in October, 1977 under a two count indictment. Petitioner was charged with murder in the first degree and with acting as an accessory before the fact to the offense of murder in the first degree. The jury determined that Petitioner hired an another man to kill Julian Watkins and that Petitioner was thus guilty as an accessory before the fact to murder in the first degree. The jury imposed the death penalty.

Petitioner asserts that he is entitled to summary judgment and a writ of habeas corpus with respect to six claims. First, Petitioner asserts that the false testimony of Terry Casteel and the state's failure to disclose that false testimony violated Petitioner's right to a fair trial and due process under the Sixth and Fourteenth Amendments. Second, Petitioner claims that he was denied his right to a fair trial and due process because the judge presiding over his murder trial had prosecuted him previously and demonstrated actual bias against him. Third, Petitioner argues that the jury instructions at his trial were defective and inadequate for two reasons: (a) the "reason-

able doubt" jury instruction permitted the jury to find guilt based on an unconstitutionally small amount of proof; (b) the jury charge concerning unanimity was misleading to a constitutionally significant degree. Fourth, Petitioner claims that his attorney, Robert Livingston, rendered ineffective assistance of counsel in violation of Petitioner's rights under the Sixth and Fourteenth Amendments. Fifth, Petitioner argues that the Tennessee Supreme Court failed to engage in any meaningful review of his death sentence for arbitrariness and disproportionality, violating Petitioner's Eighth and Fourteenth Amendment rights by leaving intact an unconstitutionally arbitrary and excessive sentence. Sixth, Petitioner claims that the trial court unconstitutionally engaged in "double counting," barred by *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992), by using the same proof at the guilt stage of his trial as at the sentencing stage of his trial.

Based on a review of the record in the case and the evidentiary hearing, the Court rules in favor of Petitioner with respect to (1) Petitioner's claims regarding constitutional defects in the jury instructions and (2) Petitioner's claim of ineffective assistance of counsel. The Court rules against Petitioner with respect to (1) Petitioner's claim that the allegedly false testimony of Terry Casteel and the state's alleged failure to disclose it violated Petitioner's right to a fair trial and due process under the Sixth and Fourteenth Amendments; (2) Petitioner's claim that Judge Beasley was biased against Petitioner; (3) Petitioner's claim that the trial judge failed to meaningfully review Petitioner's sentence for arbitrariness and disproportionality; and (4) Petitioner's claim that the trial court violated the principles set forth in *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992).

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed.1990).

An alleged factual dispute existing between the parties is not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is true, however, that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the *opponent's* are indulgently treated." *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The court must determine that a reasonable jury would be unable to return a verdict for the non-moving party in order to enter summary judgment. *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511. Thus, "[w]here the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

## III. DISCUSSION

In construing the evidence in the light most favorable to the party opposing summary judgment, as required under *Bohn Aluminum & Brass Corp.,* 303 F.2d at 427, the Court finds that there are no genuine issues of material fact with respect to Petitioner's claims. For the reasons discussed below, the Court partially grants Petitioner's motion for summary judgment.

A. Terry Casteel's Testimony and the Alleged Violations of Petitioner's Sixth and Fourteenth Amendment Rights

The Court rejects Petitioner's claim that he was denied his Sixth and Fourteenth Amendment rights because of false testimony by Terry Casteel and the State's failure to disclose that false testimony. Petitioner claims that the State failed to disclose evidence of a promise of leniency to Terry Casteel, failed to correct Mr. Casteel's false testimony regarding that promise of leniency, and failed to reveal to the defense a prior inconsistent statement that Mr. Casteel made to police investigators.

1. Alleged *Giglio* Violation

Petitioner claims that there was a secret "deal" or "deal to make a deal" between the State and Terry Casteel, which tainted Mr. Casteel's testimony and of which the jury was not informed. The existence of a deal would have violated the principles set forth in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Petitioner asserts that when Mr. Casteel denied the existence of such a deal at Mr. Austin's trial, Addendum 1, Vol. VII, at 492–93, Mr. Casteel committed perjury, and State should have corrected Mr. Casteel's misrepresentation. Petitioner cites to deposition testimony of Mr. Casteel, former Assistant District Attorney General Richard McNeese, former District Attorney General Hugh Stanton and

others in support of his claim that a deal existed.

 It is fundamental that the State may not use false testimony to obtain a conviction against a criminal defendant. *See Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935). The same prohibition exists when "the State, although not soliciting false testimony, allows it to go uncorrected when it appears." *Giglio,* 405 U.S. at 153, 92 S.Ct. at 766 (quoting *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). *See Groseclose v. Bell,* 895 F.Supp. 935 (M.D.Tenn.1995); *Rickman v. Dutton,* 864 F.Supp. 686 (M.D.Tenn.1994). *See also Bragan v. Morgan,* 791 F.Supp. 704, 713 (M.D.Tenn.1992) (relief available where witness, "although not technically committing perjury, left the jury with a materially false impression"). Moreover, if the State suppresses evidence favorable to an accused, due process is violated "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

 When a witness testifies against a co-defendant, evidence of any deal with the state is relevant to such witness' credibility and a jury is entitled to consider it. *See Campbell v. Reed,* 594 F.2d 4, 7 (4th Cir. 1979); *Brown v. Wainwright,* 785 F.2d 1457, 1465 (11th Cir.1986) (jury entitled to consider "realities of what might induce a witness to testify falsely"). It makes no difference whether such an understanding is established by a wink, a nod and a handshake, or by a signed and notarized formal document. *Duggan v. State,* 778 S.W.2d 465, 468 (Tex. Crim.App.1989). Moreover, a co-defendant who testifies with only a reasonable expectation or understanding of leniency, but not a formal agreement, still has a powerful incentive to testify falsely in order to facilitate a conviction and curry favor with a prosecutor. *Campbell,* 594 F.2d at 7–8.

 Where a conviction is obtained by the knowing use of perjured testimony, it is

fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). It is appropriate for the court to issue a writ of habeas corpus in such circumstances unless the failure to disclose perjured testimony is harmless beyond a reasonable doubt. *United States v. Bagley*, 473 U.S. 667, 679–80, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985).

■ Utilizing the standards articulated above, the Court concludes that no "deal" existed in this case. The portions of Terry Casteel's deposition to which Petitioner cites regarding the alleged deal contain inconsistencies that diminish the credibility of that testimony. At some points in his deposition Mr. Casteel asserts that Assistant Attorney General Don Strother never mentioned a deal to him, and at other points he asserts that Mr. Strother did mention a deal. Deposition of Mr. Terry Casteel, June 23, 1995 ("Casteel Depo.") at 9–11, 26–27. Furthermore, Mr. Casteel, after reviewing his deposition testimony and documents regarding the trial of Mr. Austin, determined that his deposition had been incorrect and that there had been no deal between himself and the State. E.H. at 400. Mr. Casteel attributed his mistake at the deposition to his anxiety about the proceedings, the time lapse between Mr. Austin's trial and the deposition, and his insufficient preparation for the deposition. *Id.* at 398. Mr. Casteel then signed an affidavit in which he asserted that he had made no deal with the State prior to his testimony at Mr. Austin's criminal trial. Mr. Casteel also testified to this effect at the evidentiary hearing. Moreover, Mr. Casteel stated at the evidentiary hearing that he had received no benefit from the State in exchange for signing the affidavit or for his testimony at the evidentiary hearing. *Id.* at 402.

At the evidentiary hearing Petitioner's counsel thoroughly cross-examined Mr. Casteel regarding the alleged deal and Mr. Casteel consistently maintained that no deal had existed. Mr. Casteel maintained that he had made an honest mistake in his deposition.

Mr. Casteel's testimony at the evidentiary hearing was supported by the testimony of Assistant Attorney General Richard McNeese, Attorney Ed Lenow, and Attorney Charles Wright. *See* E.H. at 16–17, 292–93, 314–317, 319–321, 332, 338–39, 342. It is also supported by the deposition testimony of Mr. Don Strother. Deposition of Don Strother, June 23, 1995, at 18–23, 51–52.

Based on the testimony at the evidentiary hearing and the Court's review of the record in this case, the Court concludes that there was no "deal" or "deal to make a deal" between the State and Terry Casteel prior to Mr. Austin's criminal trial. Therefore the State did not fail to disclose the existence of such a deal.

2. Alleged *Brady* Violation

■ In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." The standard of materiality to be applied in determining whether a conviction should be reversed because the prosecutor failed to disclose requested evidence that could have been used to impeach Government witnesses is whether there is a reasonable probability that, had evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

■ Using this standard, this Court rejects Petitioner's claim that Respondents committed a *Brady* violation in this case. The Court finds no conclusive evidence that Respondents withheld from Petitioner Mr. Casteel's statement to law enforcement officials on July 6, 1977, in which Mr. Casteel denied any involvement in or knowledge of the murder of Julian Watkins, and which contradicted Mr. Casteel's trial testimony. Furthermore, the Court finds that based on Mr. Livingston's cross-examination of Mr. Casteel, Mr. Livingston appears to have known of the prior inconsistent statement and had the opportunity to use it to impeach

Mr. Casteel's credibility. Addendum 1, Vol. VII, at 490–94. Accordingly, the Court finds that there was no *Brady* violation in this case.

The Court concludes that Petitioner suffered no violation of his rights based on the allegedly false testimony of Terry Casteel and the prosecution's alleged failure to reveal this false testimony. Thus the Court denies Petitioner's motion for summary judgment on these grounds.

## B. Judge Beasley's Alleged Bias

The Petitioner asserts that he was denied his right to a fair trial and due process under the Sixth and Fourteenth Amendments because of alleged bias against him by Judge Beasley, the judge who presided at his trial. In support of this claim Petitioner notes that prior to serving as the trial judge in Petitioner Austin's murder prosecution, Beasley worked as Assistant Attorney General and prosecuted the Petitioner for several crimes. Following a review of the evidence presented, the Court rejects Petitioner's argument.

Only a strong, direct interest in the outcome of a case is sufficient to overcome the presumption of judicial evenhandedness. *Del Vecchio v. Illinois Dept. of Corrections,* 31 F.3d 1363, 1373 (7th Cir.1994). In the Sixth Circuit case law establishes that a trial judge who previously prosecuted a defendant is not required to recuse himself from a later case involving that defendant unless there is actual bias or prejudice. *Corbett v. Bordenkircher,* 615 F.2d 722, 723 (6th Cir.1980); *Jenkins v. Bordenkircher,* 611 F.2d 162 (6th Cir.1979), *cert. denied* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798 (1980). Although some case law suggests that the due process clause requires a judge to recuse himself where there is no showing of actual bias but where a sufficient motive for bias exists, this Court concludes that no such motive existed in Mr. Austin's trial. *See Del Vecchio,* 31 F.3d at 1371. Where there is no showing of actual bias, the court will not assume that a state court judge would be unable to give a defendant a fair trial solely because he had earlier contact with the de-

fendant in the course of prosecuting unrelated charges. *Jenkins,* 611 F.2d at 166.

Case law indicates that a defendant is not denied a fair trial solely because the presiding judge previously prosecuted the petitioner on unrelated charges. *Jenkins,* 611 F.2d at 166. The charge for which Judge Beasley previously prosecuted Mr. Austin was a larceny charge unrelated to this murder charge. Because the charges were unrelated, neither the fact that Judge Beasley was involved in both actions nor the fact that the larceny charge was considered as an aggravating circumstance in Petitioner's sentencing for murder deprived Petitioner of his constitutional rights.

Furthermore, there is substantial evidence that Judge Beasley harbored no bias against Mr. Austin. Judge Beasley attests to this in his affidavit. In addition, Judge Beasley states that he did not even recognize Mr. Austin until a third person reminded him of Mr. Austin's identity. Finally, Judge Beasley denied the State's motion to revoke bond in Mr. Austin's murder case and allowed Petitioner to remain free until trial. Based on this evidence, the Court concludes that Petitioner's allegations that Judge Beasley was biased against Petitioner lack merit. Accordingly, the Court denies Petitioner's motion for summary judgment with respect to this claim.

## C. Alleged Defects in the Jury Instructions

As the Court noted in *Rickman v. Dutton,* 854 F.Supp. 1305, 1310–12 (M.D.Tenn.1994), the Tennessee Code creates in the Defendant a protected liberty interest in having a jury impose his death sentence. Where the jury instructions are unconstitutional, the jury's weighing may be invalid unless harmless error doctrine applies. Where the error is not harmless, there must be a new sentencing because an effort by the appellate court to reweigh the evidence would violate Petitioner's due process rights. *Rickman,* 854 F.Supp. at 1312. The Court concludes that resentencing is necessary in the current action because two of the lower court's jury instructions were unconstitutional.

**1318**

### 1. Reasonable Doubt Jury Instruction

 The Constitution requires that guilt in a criminal trial be established beyond a reasonable doubt. Petitioner alleges that the reasonable doubt jury instruction given at the guilt phase of his trial violated the Sixth, Eighth, and Fourteenth Amendments because it allowed the jury to find guilt based on a lesser degree of proof than that required by the Constitution. *See Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990); *Rickman v. Dutton,* 864 F.Supp. 686 (M.D.Tenn.1994).[1]

At Mr. Austin's trial, the court's jury instruction regarding reasonable doubt consisted of the following:

> In order to convict the defendant, Richard Austin, of the offense of Accessory Before the Fact to the Murder in the First Degree of Julian C. Watkins, or some lesser included offense of that crime, you must find beyond a reasonable doubt and to a moral certainty that:
>
> 1) The crime of the murder in the First Degree of Julian C. Watkins, or some lesser included offense of that crime, was in fact committed;
>
> 2) The crime of the Murder in the First Degree of Julian C. Watkins, or some lesser included offense of that crime, was committed within the jurisdiction of this court, that is, in Shelby County Tennessee; and
>
> 3) The principal offenders Jack Charles Blankenship and/or Terry Lee Casteel actually committed the offense of the Murder in the First Degree of Julian C. Watkins or some lesser included offense of that crime, in such a manner that

> would make them guilty under the law of this State as read to you;
>
> 4) The defendant on trial before you, Richard Austin, did before the finding of this indictment, feloniously move, incite, counsel, hire, command or procure Jack Charles Blankenship and/or Terry Lee Casteel to commit the offense of Murder in the First Degree of Julian C. Watkins, or some lesser included offense of that crime, and is therefore guilty as an accessory before the fact. You cannot find the defendant, Richard Austin guilty as an accessory before the fact unless you first find beyond a reasonable doubt and to a moral certainty the principals, Jack Charles Blankenship and/or Terry Lee Casteel guilty of the offense of the Murder in the First Degree of Julian C. Watkins, or some lesser included offense of that crime.

Trial Tr. 1021–1022.

\* \* \* \* \* \*

> Reasonable Doubt: Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense.

Trial Tr. 1029.

 The Court finds that this reasonable doubt jury instruction has the same impermissible impact as did the reasonable doubt instruction held to be unconstitutional in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).[2] In *Cage* the

---

**1.** The Court rejects Respondent's argument that Petitioner has defaulted this claim. *Rickman,* 864 F.Supp. at 707–708.

**2.** In *Cage* the reasonable doubt instruction stated the following:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not

> establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is

Supreme Court found that the reasonable doubt instruction violated the Constitution by requiring that the jury have a higher level of doubt than a "reasonable doubt" in order to acquit the defendant. The same is true of the jury instructions at Petitioner's trial. In Mr. Austin's trial the "moral certainty" language combined with the "mind rest easy" language permitted a reasonable juror to find guilt based on a degree of proof below that required by the Constitution. *See Rickman v. Dutton*, 864 F.Supp. at 708–10.[3] An instruction that merely requires jurors to be "morally certain" of a defendant's guilt impermissibly suggests a standard of proof lower than due process requires or suggests that conviction may be based on factors other than the prosecution's proof. *Rickman*, 864 F.Supp. at 709. This Court finds that unlike the case of *Victor v. Nebraska*, 511 U.S. 1, –––– ––––, 114 S.Ct. 1239, 1247–48, 127 L.Ed.2d 583 (1994), in which the remainder of a jury instruction lent content to the phrase "moral certainty" rendering it constitutional, there was no component of the jury charge in Mr. Austin's trial that lent sufficient content to cure the deficient reasonable doubt instruction.

Moreover, the instruction in Mr. Austin's trial problematically defined "reasonable doubt" as "an inability after such investigation [of all the proof in the case] to let the mind rest easily upon the certainty of guilt." *Id.* The Court concludes that the "moral certainty" language[4] in conjunction with the "mind rest easily" language suggests to a reasonable juror a lower burden of proof than is required by the Constitution.[5]

For these reasons, the Court grants Petitioner's motion for summary judgment with respect to this claim.

**2. The Jury Charge Concerning Unanimity**

■ Petitioner claims that his rights under the Eighth and Fourteenth Amendments were violated by the trial court's failure to instruct the jury regarding the effect of non-unanimity and the jury's option to recommend life imprisonment. Petitioner argues that this impermissibly swayed the jury in favor of imposing the death penalty.

■ In *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court invalidated death sentencing procedures that were discretionary because they imposed capital sentences in an arbitrary and unintelligible way. *See Id.* at 249–51, 92 S.Ct. at 2731–32 (Douglas, J.); *Id.* at 293, 92 S.Ct. at 2754 (Brennan, J.); *Id.* at 309–310, 92 S.Ct. at 2762 (Stewart, J.); *Id.* at 311–13, 92 S.Ct. at 2763–64 (White, J.); *Id.* at 364, 92 S.Ct. at 2790 (Marshall, J.). The Constitution requires states to adhere to specific standards when imposing a death sentence. First, a state must avoid the "standardless and unchanneled imposition of death sentences in the uncontrolled discretion of a basically uninstructed jury." *Godfrey v. Georgia*, 446 U.S. at 429, 100 S.Ct. at 1765. A jury that has the responsibility for determining whether or not to impose a death sentence must be properly instructed as to all aspects of the sentencing process. *Walton v. Arizona*, 497 U.S. at 653, 110 S.Ct. at 3057.

■ Second, sentencing procedures must be such that the death penalty will only be imposed on basis of rational criteria, such as

required is not an absolute or mathematical certainty, but a *moral certainty*.
*Cage*, 498 U.S. at 40, 111 S.Ct. at 329 (emphasis in original).

3. The reasonable doubt jury instruction in *Rickman* stated the following:

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict

of any criminal charge, but moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense.
*Rickman*, 864 F.Supp. at 708.

4. The Court instructed the jury that "moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense." Trial Tr. 1029.

5. Furthermore, this flaw in the jury instructions is not subject to harmless error review. *Sullivan v. Louisiana*, 508 U.S. 275, 279–81, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993).

retribution and deterrence, and not on the basis of whim, mistake, bias, or other irrelevant factors. *See e.g., Beck v. Alabama,* 447 U.S. 625, 637–38, 642–43, 100 S.Ct. 2382, 2389–90, 2392, 65 L.Ed.2d 392 (1980) (invalidating charge instructing jurors to choose between convicting defendants of the most serious crime or acquitting them of any crime because it increased the risk that the death sentence would be imposed inaccurately); *Caldwell v. Mississippi,* 472 U.S. 320, 331, 333, 105 S.Ct. 2633, 2641, 2641–42, 86 L.Ed.2d 231 (1985) (reasoning that a charge that misinformed a jury that there was automatic review of death verdicts created a risk of inaccurate death sentences by allowing the jury to believe it could err and be corrected on appeal).

■ Third, juries that have the power to impose the death penalty must be informed of and consider any mitigating evidence that the defense offers. *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). This rule forbids restrictions on the introduction of mitigating evidence and prohibits instructions that would prevent jurors from assessing mitigating circumstances unless all twelve jurors unanimously agreed that such factors were present. *Mills v. Maryland,* 486 U.S. 367, 384, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988). It would be impermissibly arbitrary to allow or to require that the death penalty be imposed because one juror was able to prevent the other eleven from considering mitigating evidence. *McKoy v. North Carolina,* 494 U.S. 433, 440–41, 110 S.Ct. 1227, 1232, 108 L.Ed.2d 369 (1990).

■ The standard of review of a disputed jury instruction is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990)). In both *Estelle* and *Boyde,* the Supreme Court was reviewing an "ambiguous" instruction. At Mr. Austin's trial, the charge was both ambiguous and

erroneous because it misstated the relevant law. Applying the *Boyde* standard, this Court finds that it was reasonably likely that the jury in Mr. Austin's case applied the charge in an unconstitutional manner.

It was reasonably likely from the charge and the verdict form provided in Petitioner's case that the jury believed it could not consider mitigating circumstances unless the jury was unanimous as to the existence of such circumstances. This violates the principles set forth in *Mills v. Maryland,* 486 U.S. 367, 384, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988). Because the Court finds that the jurors were precluded from weighing "factors which may [have] call[ed] for a less severe penalty," *Lockett,* 438 U.S. at 605, 98 S.Ct. at 2965, Mr. Austin's sentence cannot stand. Further, the Court finds that it cannot rule out the "substantial possibility that the jury may have rested its verdict on [an] 'improper' ground", *Mills,* 486 U.S. at 377, 108 S.Ct. at 1867 (footnote omitted). For these reasons as well the Court must remand for resentencing.

The capital-sentencing scheme in effect at the time of Mr. Austin's trial, Tennessee Code Annotated Section 39–2404, directed "the trial judge [to] include in [the] instructions for the jury to weigh and consider any mitigating circumstances and any of the statutory aggravating circumstances . . . which may be raised by the evidence." Tenn.Code Ann. § 39–2404(e).[6] The jury may reach a sentence in one of the following ways:

1. If the jury unanimously determines that . . . statutory aggravating circumstances have been proved by the state . . . and said . . . circumstances are not outweighed by any mitigating circumstances, the sentence shall be death. Tenn.Code Ann. § 39–2404(g).

2. If the jury unanimously determines that no statutory aggravating circumstances have been proved by the state . . . or if the jury unanimously determines that . . . statutory aggravating circumstances have been proved . . . but . . . are outweighed by one or more miti-

---

6. Tennessee's capital sentencing statute has been recodified. The subsections cited here generally correspond to Tennessee Code Annotated Section 39–13–204 (1991).

gating circumstances, the sentence shall be life imprisonment. Tenn.Code Ann. § 39–2404(f).

3. If the jury cannot ultimately agree as to punishment, the judge shall dismiss the jury and ... impose a sentence of life imprisonment. Tenn.Code Ann. § 39–2404(h).

The latter provision indicates that each juror can individually assess the circumstances and compel a sentence less than death.

These statutory provisions stand in contrast to the actual charge given at Mr. Austin's trial:

If you unanimously determine that no statutory aggravating circumstance has been proved to the State beyond a reasonable doubt; or if the jury unanimously determine that statutory aggravating circumstance or circumstances have been proven by the State beyond a reasonable doubt; but that said statutory aggravating circumstance or circumstances are outweighed by one or more mitigating circumstance, the sentence shall be life imprisonment. You will write your verdict upon the enclosed form attached hereto and made a part of this charge.

This verdict should be as follows: "We, the jury, unanimously find that the punishment shall be life imprisonment"

The verdict must be unanimous and signed by each juror. The jury in no case should have any sympathy or prejudice....

The forms are as follows: Punishment of Life Imprisonment:

"We, the jury, unanimously find that the punishment shall be life imprisonment..."

(1) We, the jury, find unanimously—or we, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances. There are blank spaces for the listing, if so found.

(2) We, the jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so listed above.

(3) Therefore, we, the jury, unanimously find that the punishment for the defendant shall be death ...

Trial Tr. 1135–1138.

The jury's verdict suggested that the jury may have mistakenly believed that their verdict had to be unanimous. The verdict was as follows:

We the jury unanimously find the following list of statutory aggravating circumstance or circumstances.

4. The defendant committed the murder for remuneration or the promise of remuneration, or employed another to commit the murder for remuneration or the promise of remuneration.

2. We, the jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so listed above.

Therefore, we, the jury, unanimously find that the punishment for the defendant, Richard Austin, shall be death....

Trial Tr. 1139.

The Court finds it reasonably likely that the jury in Mr. Austin's case interpreted the instructions as preventing any juror from considering mitigating circumstances unless the jury unanimously agreed as to that circumstance. Hence, resentencing is necessary. *See Mills*, 486 U.S. at 384, 108 S.Ct. at 1870 (requiring resentencing where petitioner's jury may have arrived at a death verdict improperly).

█ The instructions at Mr. Austin's trial violated the second and third Eighth Amendment rules adopted by the Supreme Court after *Furman*. The Constitution prohibits the irrational favoring of a death penalty sentence that occurs where a court fails to instruct on the jurors' ability to disagree and impose a sentence of life imprisonment if at least one juror favors that outcome. *See Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In *Beck* it was constitutional error to base a capital conviction and sentence on a determination by a jury that impermissibly believed that its only alternative was to acquit a guilty offender. *Id.* at 630, 637, 100 S.Ct. at 2386, 2389.

Similarly, in Petitioner's case, it was constitutionally impermissible for the jury to impose the death penalty where the jury was falsely led to believe that a failure to arrive at a unanimous decision would prevent the jury from carrying out its duty. The effect in Mr. Austin's case was to eliminate the possibility of a sentence of life imprisonment unless there was unanimity, which is not required by Tennessee's capital sentencing statute, and which irrationally favors the imposition of the death sentence.

■ The instructions in Mr. Austin's case also unconstitutionally precluded the jurors from considering any mitigating evidence unless all twelve jurors agreed on the existence of a particular circumstance. *Mills,* 486 U.S. at 384, 108 S.Ct. at 1870. The case of *Kordenbrock v. Scroggy,* 919 F.2d 1091 (6th Cir. 1990), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 669 (1991), is controlling here. In that case habeas corpus relief was granted because the trial court had failed to instruct the jurors explicitly that they "need not be unanimous with regard to mitigating factors." *Id.* at 1108. The Supreme Court concluded that without this charge, jurors might assume that they could not give weight to mitigating circumstances unless the other eleven jurors agreed. *Id.* at 1110. A death sentence imposed in the absence of instructions authorizing non-unanimity on mitigating factors is unconstitutional:

> Because juries are likely to act as a unit in sentencing, ... the danger of a tainted sentence [is] high where jurors are "never expressly informed in plain and simple language that even if one juror believed that the death penalty should not be imposed, [petitioner] would not be sentenced to death...."
>
> Because the jurors in this case were told that aggravating factors had to be unanimous, but were not told exactly what role mitigating factors play, it would have been reasonable for them to assume that mitigating factors had to be found unanimously as well.

*Id.* at 1109–10 (quoting *Kubat v. Thieret,* 867 F.2d 351, 373 (7th Cir.1989), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989)).

Had the jury in *Kordenbrock* understood that one juror could have blocked the death sentence the court could be more certain that the "jur[y] carr[ied] out [its] role[ ] properly." *Id.* at 1110. Similarly, the jury in Mr. Austin's case was not informed of the effect of non-unanimity. The trial court's failure to inform jurors that they could individually consider mitigating circumstances left uncertainty as to the propriety of the imposition of the death penalty. Even worse, the jurors were instructed that they had to find mitigating factors unanimously and that the verdict had to be unanimous as to the imposition of a death sentence or a sentence of life imprisonment.

By misinforming the jury about state law the trial judge impermissibly swayed deliberations in favor of death and forbade individual jurors from considering mitigating factors unless all twelve jurors agreed on their existence and weight. Consequently, the Court finds that the instructions at Mr. Austin's trial violated the Eighth and Fourteenth Amendments and grants Petitioner's summary judgment motion with respect to this issue.

## D. Ineffective Assistance of Counsel Claim

■ The Court concludes that Petitioner received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. The Court finds that attorney Robert Livingston failed to conduct sufficient investigation, failed to file sufficient pretrial motions, failed to present evidence at sentencing, and failed to call critically important witnesses during the guilt phase of trial.

With respect to investigation, the only action that Mr. Livingston took in representing Petitioner was to interview Jack Charles Blankenship, the man who pled guilty to killing Julian Watkins. Based on this interview Mr. Livingston got an admission from Mr. Blankenship that Petitioner Austin was not involved in the crime. However, Mr. Livingston did not call Blankenship as a witness at trial to testify regarding Petitioner's innocence despite Petitioner's request that Mr. Livingston do so. Richard Austin Affidavit ("Austin Affidavit"), para. 13; De-

position of Jack Charles Blankenship ("Blankenship Depo.") July 5, 1995 at p. 5. In addition, Mr. Livingston refused to interview other witnesses in this case despite the fact that Petitioner located several potential witnesses and gave Mr. Livingston their addresses. Mr. Livingston also refused to interview any of Petitioner's family members and refused to call them as witnesses. Furthermore, Mr. Livingston never interviewed Petitioner about the facts of the case prior to the time he advised Petitioner to take the witness stand. Austin Affidavit, para. 14.

Mr. Livingston failed to file any pretrial motions. This is particularly surprising given that this was the first death penalty case tried in Tennessee under the new death penalty law. Mr. Livingston also failed to object to misleading and constitutionally deficient aspects of the jury instructions.

Mr. Livingston did not present any evidence at the sentencing hearing. This is shocking because the sentencing phase of a death penalty trial is designed to allow the defendant an opportunity to present mitigating and humanizing evidence. However at Petitioner's sentencing hearing, Mr. Livingston did not present any evidence regarding Petitioner's personal background, relationships to friends and family, or mental or physical health. Mr. Livingston made this decision despite the existence of numerous witnesses who indicated at the evidentiary hearing that they had wished to testify.

Mr. Livingston's actions undoubtedly caused prejudice to Petitioner. This was a closely decided case where the jury acquitted Petitioner of first degree murder under count one and rejected three out of the four aggravating factors sought by the prosecutors. If Mr. Livingston had properly investigated and prepared the case, he would have called multiple witnesses who were friends, employees, or associates of Petitioner, or who were religious leaders. Deposition of Richard Austin ("Austin Depo.") at 23–31. Mr. Livingston's failure to call witnesses was particularly problematic at the sentencing phase of trial.

Finally, Mr. Livingston should have interviewed Mr. Austin and prepared him to testify before Mr. Livingston called him to the stand during the guilt phase of the trial. Austin Depo. p. 56.[7]

■■■■ The benchmark for assessing any claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to succeed in a claim of ineffective assistance of counsel, a defendant must satisfy a two-pronged analysis by demonstrating:

(1) that counsel's performance fell below an objective standard of reasonableness; *Id.* at 687, 104 S.Ct. at 2064, and

(2) that there is a reasonable probability that, but for the trial attorney's errors, the result of the proceeding would have been different. *Id.* at 692, 104 S.Ct. at 2067.

■■■■ This Court, in assessing the trial attorney's performance, must determine whether the attorney's assistance was reasonable considering all the circumstances. *Id.* at 688, 104 S.Ct. at 2064–65. This Court must decide whether, in light of all of the circumstances, the trial counsel's actions and omissions exceeded the range of professionally competent assistance. *Id.* at 690, 104 S.Ct. at 2065–66.[8]

■■■■ The prejudice element in *Strickland*'s second prong requires a defendant to show that the particular errors were unreasonable and had an adverse effect on the defense. *Id.* at 693, 104 S.Ct. at 2067–68. In

---

7. The Court notes that Mr. Livingston has previously been judicially determined to have rendered ineffective assistance of counsel in the cases of *United States v. Goodwin*, 531 F.2d 347 (6th Cir.1976) and *Ronald E. Rickman v. Michael Dutton*, 864 F.Supp. 686 (M.D.Tenn.1994).

8. The Court notes that some individual errors can so unbalance the proceedings that "the right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

**1324**

order to show prejudice a defendant must show "... that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome ..." *Id.* at 694, 104 S.Ct. at 2068. The guiding principle of the courts in considering ineffectiveness of counsel claims is whether, despite a presumption of reliability, the result of a particular proceeding is probably unreliable due to a deficiency in the adversarial process. *Id.* at 696, 104 S.Ct. at 2069.

*Strickland's* prejudice element may sometimes be presumed. Prejudice is legally presumed when the assistance of counsel has been altogether actually or constructively denied. *Id.* at 692, 104 S.Ct. at 2067; *Powell v. Alabama,* 287 U.S. 45, 56, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). The court may presume prejudice exists where various kinds of state interference with counsel's assistance have occurred. *Id.* Where defense counsel fails to subject the prosecution's case to meaningful adversarial testing the court may presume prejudice exists. *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984). The presumption of prejudice is also justified in circumstances where the prejudice is so likely that a case by case inquiry into the alleged prejudice is not feasible. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

The Sixth Amendment and Fourteenth Amendment requirements of effective assistance of counsel also apply to the penalty phase of trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Courts are particularly cautious in preserving a defendant's right to effective assistance of counsel at a capital sentencing hearing. *See, e.g., Kubat v. Thieret,* 867 F.2d 351, 367 (7th Cir.1989) *cert. denied* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989); *Harris v. Dugger,* 874 F.2d 756, 763 (11th Cir.1989) *cert. denied* 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989). *Strickland's* second prong requires a showing that the death sentence resulted from "... a breakdown in the adversarial process that rendered the result unreliable." *Id.* The unprofessional acts or omissions of

counsel must be identified by the petitioner unless there is a presumption of prejudice. *Id.* at 690, 104 S.Ct. at 2065–66.

In order to assess the reasonableness of an attorney's decision whether or not to investigate certain aspects of a case or to present mitigating evidence the court must consider all of the surrounding circumstances. *Id.* at 691, 104 S.Ct. at 2066; *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (holding that the trial attorney's failure to conduct pre-trial discovery and resulting failure to file a motion to suppress evidence was unreasonable and fell below prevailing professional norms.)

The Supreme Court has stated repeatedly that the pretrial phase of a criminal defense is "perhaps the most critical period of the proceedings," a time when "consultation, thorough-going investigation and preparation are vitally important." *Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59–60, 77 L.Ed. 158 (1932); *accord e.g., Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). As any trial attorney knows, "a purported trial without adequate pretrial preparation amounts to no trial at all." *Brooks v. Texas,* 381 F.2d 619, 624 (5th Cir.1967).

Counsel has the duty to interview potential witnesses and to make independent examination of the factual circumstances in the case. *Rummel v. Estelle,* 590 F.2d 103 (5th Cir.1979); *Bell v. Georgia,* 554 F.2d 1360 (5th Cir.1977) (granting habeas petition based on defense counsel's failure to make "any effort to contact" critical witnesses or "otherwise undertake any independent investigation.")

Counsel's duties at the penalty phase of trial must be considered in light of the United States Supreme Court holding that "in capital cases it is constitutionally required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of the defendant prior to the imposition of the death sentence." *Gregg v. Georgia,* 428 U.S. 153, 189 n. 38, 96 S.Ct. 2909, 2933 n. 38, 49 L.Ed.2d 859 (1976). *See also, Glenn v. Tate,* 71 F.3d 1204 (6th Cir.1995).

It is defense counsel's responsibility to insure that mitigating considerations are presented to the sentencing authority. A substantial failure to offer such information plainly constitutes ineffective assistance of counsel. *See Mason v. Balcom,* 531 F.2d 717 (5th Cir.1976); *United States v. Pinkney,* 551 F.2d 1241 (D.C.Cir.1976).

Even in non-capital cases, counsel has a constitutional obligation to present evidence to the sentencing authority of all relevant mitigating circumstances such as the background and character of the defendant. Counsel has the duty to interview potential witnesses and to make an independent examination of the factual circumstances involved. *Rummel v. Estelle,* 590 F.2d 103 (5th Cir. 1979).

Based on the facts and circumstances of the current action, the Court finds that Petitioner received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. Mr. Livingston failed to conduct sufficient investigation, failed to prepare, failed to present evidence, failed to make necessary motions, and failed to function as a meaningful adversary to the government. Were it not for Mr. Livingston's failings, the Court concludes there is a reasonable probability that the case would have been decided differently. At a minimum, the Court finds that there is a strong probability that Mr. Austin would not have been sentenced to death. *See Rickman v. Dutton,* 864 F.Supp. 686 (M.D.Tenn.1994). Accordingly, the Court grants Petitioner's motion for summary judgment on this claim.

E. Allegedly Insufficient Review for Arbitrariness and Disproportionality

The Court determines that the Tennessee Supreme Court's review of Petitioner's death sentence for arbitrariness and disproportionality was sufficient under the Eighth and Fourteenth Amendments.

Petitioner argues that in the current action the Tennessee Supreme Court affirmed Mr. Austin's death sentence on direct appeal without engaging in sufficient review to determine whether (1) Petitioner's death sentence was excessive and disproportionate; (2) whether the outcome of jury deliberations was tainted by arbitrariness, caprice and prejudice; or (3) whether there was evidentiary support for the jury's aggravating and mitigating circumstance conclusions. The Petitioner also objects to the fact that Mr. Austin was not given notice of or an opportunity to be heard during the court's review of his sentence.

The Court notes that a state may inflict the death penalty without violating the Eighth Amendment so long as the class of crimes for which the death penalty may be imposed is narrow, the sentencer's discretion is limited, and the punishment is not excessive. A punishment is not excessive if it involves no unnecessary and wanton infliction of pain and if it is not grossly out of proportion to the severity of the crime. *Gregg v. Georgia,* 428 U.S. 153, 168–88, 96 S.Ct. 2909, 2922–32, 49 L.Ed.2d 859 (1976).

In Tennessee, first-degree murder cases are handled through a bifurcated system. At the sentencing phase the jury may only impose the death penalty upon finding that one or more statutory aggravating circumstances are present. The jury must also find that mitigating circumstances do not outweigh aggravating circumstances. The jury must put its separate determinations in writing so that the trial judge can ascertain whether the jury has undertaken the correct analysis in selecting a death sentence. These procedural prerequisites to imposing the death penalty comport with the mandate of *Gregg,* 428 U.S. at 191–98, 96 S.Ct. at 2933. The Court also notes that the Tennessee death penalty statute has been upheld against constitutional challenge. *See, e.g., Barber v. State,* 889 S.W.2d 185 (Tenn.1994); *State v. Nichols,* 877 S.W.2d 722 (Tenn.1994).

At the time that Petitioner's case was before the Tennessee Supreme Court, the Tennessee Death Penalty Act required the court to determine on its automatic review of each sentence whether (1) the death sentence was imposed in an arbitrary fashion; (2) the evidence supported the jury's finding of aggravating circumstances; (3) the evidence supported the findings of insufficient mitigating circumstances; (4) the sentence of death was excessive or disproportionate to the penalty

imposed in similar cases considering both the nature of the crime and the defendant. Tenn.Code Ann. § 39–2–205(c). In *State v. Austin,* 618 S.W.2d 738 (1981), the Court applied this standard and concluded that the sentence was neither unconstitutionally arbitrary nor disproportionate. *Austin,* 618 S.W.2d at 741–42.

■ It is noteworthy that the Eighth Amendment does not require that a death sentence receive proportionality review. *Pulley v. Harris,* 465 U.S. 37, 44, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984). Therefore there is no violation in this case upon which the Court may grant federal habeas corpus relief under 28 U.S.C. § 2254(a).

■ In terms of proportionality review of Petitioner's sentence, there are some disparities in the imposition of the death penalty in Tennessee, but the Supreme Court has found that such disparities do not create Eighth Amendment problems. *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). The Court finds that the sentence imposed on Mr. Austin is not disproportionate. *See Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). Based on the distinctions between Defendants in the current matter, the fact that one jury imposed the death penalty on a defendant found to have contracted for an assassination (Mr. Austin) and another jury imposed a life sentence on a defendant found to have actually killed the victim (Mr. Blankenship) does not constitute unconstitutionally disproportionate sentencing.

■ The Court also concludes that Petitioner suffered no violation of his substantive due process rights when he received no notice of or opportunity to be heard during the Tennessee Supreme Court's review of his death sentence for arbitrariness and disproportionality. The Court acknowledges that Petitioner has a protected liberty interest in receiving a sentence that is neither arbitrary nor disproportionate, but the Court finds

that the amount of process that the Mr. Austin received in this case was sufficient. The state court found all the necessary facts to support the view that the sentence was neither arbitrary nor excessive.

For these reasons, the Court denies Petitioner's motion for summary judgment on this claim.

## F. *Middlebrooks* Claim

Petitioner argues that the decision to allow the use of the same proof to establish Petitioner's guilt as an accessory before the fact, *see* Tenn.Code Ann. § 39–107 (repealed 1989), and to establish the aggravating circumstance that Mr. Austin hired another person to kill Julian Watkins, *see* Tenn.Code Ann. § 39–2404(i)(4), violated Petitioner's Eighth and Fourteenth Amendment rights. Petitioner claims that this constituted impermissible "double-counting" under the decision of *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992).[9] The Court rejects this argument for two reasons.

■ First, despite Petitioner's invocation of the Eighth and Fourteenth Amendments, Petitioner's allegation of a *Middlebrooks* violation fails to present a cognizable federal claim. Despite the Tennessee Supreme Court's discussion of the Eighth Amendment in *Middlebrooks,* the ultimate holding in that case rested solely on state constitutional grounds. *State v. Howell,* 868 S.W.2d 238, 259 n. 7 (Tenn.1993). Furthermore, *Middlebrooks* is not dispositive of the federal constitutional perspective on the issue of double counting. *See Lowenfield v. Phelps,* 484 U.S. 231, 241, 108 S.Ct. 546, 553, 98 L.Ed.2d 568, *reh'g. denied,* 485 U.S. 944, 108 S.Ct. 1126, 99 L.Ed.2d 286 (1988). Therefore, if this Court were to grant Petitioner relief on Eighth Amendment grounds, the Court would violate the principle set forth in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which prohibits the use of federal

9. The court in *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992), held that when a defendant is convicted of first-degree murder solely on the basis of felony-murder, the aggravating circumstance of felony-murder does not narrow the class of death eligible murderers sufficiently to

satisfy the Eighth Amendment and the Tennessee Constitution. Therefore the aggravating circumstance is unconstitutionally applied where the death penalty is imposed upon conviction of felony-murder.

habeas corpus to create or announce a new constitutional rule.

■ Second, Petitioner's *Middlebrooks* argument is flawed because Petitioner's claim is not a *Middlebrooks* issue. In *Middlebrooks,* the Tennessee Supreme Court held that, when a defendant is convicted of felony murder, the felony murder aggravating circumstance does not narrow the class of death-eligible defendants if it *exactly* duplicates the elements of the offense supporting the conviction that make the defendant eligible for the death penalty. *State v. Stephenson,* 878 S.W.2d 530, 557 (Tenn.1994). In the current action, as in *Stephenson,* Petitioner was convicted based on his criminal responsibility for another person's conduct. According to the law in effect at the time of Julian Watkins' murder, an accessory before the fact was deemed a principle offender and punished as such. *See* Tenn.Code Ann. § 39–108 (repealed 1989). Because not every defendant who is guilty of first-degree murder pursuant to the criminal responsibility statute has also hired another person to commit the murder, however, the aggravating circumstance that Petitioner's jury found did narrow the class of death-eligible defendants in accordance with *Middlebrooks. Stephenson,* 878 S.W.2d at 557. Therefore, the aggravating circumstance that Petitioner's jury found did narrow the class of death-eligible defendants in accordance with *Middlebrooks.* For these reasons, the Court denies Petitioner's motion for summary judgment with respect to this claim.

## IV. CONCLUSION

In entering a judgment for Petitioner, the Court finds that Mr. Austin has prevailed on two of his claims as a matter of law. The Court finds that constitutional infirmities existed both at the guilt and sentencing phases of Mr. Austin's trial. For the reasons set forth above, the Court grants Mr. Austin's Motion for Summary Judgment with respect to his claims regarding constitutionally defective jury instructions and ineffective assistance of counsel.

Accordingly, the Court vacates Petitioner's death sentence. Further, the writ of habeas corpus shall issue, unless within 120 days from the entry of this order the State affords Mr. Austin a new trial.

An Order consistent with the foregoing reasoning will be entered contemporaneously with this Memorandum.

### ORDER

Pending before the Court in the above-styled case is Petitioner's Motion for Summary Judgment (Doc. No. 146).

In accordance with the reasoning set forth in the contemporaneously entered Memorandum, the Court hereby partially GRANTS the Motion. The Court GRANTS Petitioner's Motion with respect to his claims regarding constitutionally defective jury instructions and ineffective assistance of counsel.

The Court VACATES Petitioner's death sentence. Further, the writ of habeas corpus shall ISSUE, unless within 120 days from the entry of this order the State affords Mr. Austin a new trial.