Charles Edward JENKINS, Petitioner-Appellant,

v.

Donald E. BORDENKIRCHER, Superintendent, Kentucky State Penitentiary, Respondent-Appellee.

No. 78–3594.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1979.

Decided Dec. 19, 1979.

---

J. Vincent Aprile, II, Asst. Deputy Public Advocate, Frankfort, Ky. (Court-appointed), for petitioner-appellant.

Charles Edward Jenkins, pro se.

Robert F. Stephens, Atty. Gen. of Kentucky, James L. Dickinson, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before EDWARDS, Chief Judge, and CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The petitioner Charles Edward Jenkins appeals from the district court's denial of his application for a writ of habeas corpus. The petitioner seeks release from the Kentucky State Penitentiary where he is serving two consecutive life sentences following his convictions of murder and armed robbery. He contends that the proceedings in the state court which resulted in the two convictions were fundamentally unfair, denying him rights guaranteed by the due process clause of the Fourteenth Amendment. We affirm the judgment of the district court.

Jenkins and Anthony Svara were indicted for the murder of William Miller whose death occurred in Henderson County, Kentucky on August 23, 1974. Both were also indicted for armed robbery of the victim and Jenkins was additionally charged under the Kentucky habitual criminal act. Prior to trial the prosecution dismissed the armed robbery charge against Svara and the habitual criminal charge against Jenkins. Jenkins and Svara were tried jointly in the Henderson County Circuit Court after their individual motions for severance were overruled. The Supreme Court of Kentucky affirmed both of Jenkins' convictions. Svara filed a notice of appeal to the Supreme Court of Kentucky, but later withdrew it and no appeal was perfected on his behalf.

The application for a writ of habeas corpus was based on the following claims:

(1) It was error for the trial court to deny petitioner's motion for a change of venue in view of widespread pretrial publicity;

(2) It was error for the trial judge to deny the petitioner's motion for the judge to recuse himself;

(3) It was error for the trial court to deny the petitioner's motion for a severance.

The district court considered each of these claims and filed a memorandum opinion in which each was found to lack merit as a basis for habeas corpus relief.

## CHANGE OF VENUE

The state trial judge held a hearing on the motion for change of venue and a complete transcript of the hearing is included in the record which we have reviewed. The petitioner filed affidavits of three persons who stated that it was their opinion that Jenkins could not receive a fair trial in Henderson County, Kentucky. In addition, petitioner's attorney filed copies of a number of newspapers which contained stories related to the charges against Jenkins. In response the prosecution filed the affidavits of two Henderson County magistrates and the court heard testimony from the chief of police of the City of Henderson, the sheriff of Henderson County and the Henderson County judge. It was the opinion of these

affiants and the witnesses that Jenkins could receive a fair trial in Henderson County.

Review of the transcript discloses that the trial judge meticulously followed the requirements of the controlling statutes. *See* Kentucky Revised Statutes, §§ 452.-210, .220. Following the hearing the trial judge gave his reasons for overruling the motion for change of venue. He stated that in passing on the motion he gave the petitioner the benefit of the doubt that a substantial number of people, including prospective jurors, may have read the newspaper accounts. The court found, nevertheless, that there was practically no discussion of the Commonwealth's evidence in the newspaper accounts and that a number of the articles highlighted the fact that the defendant had pleaded not guilty. Further, the court found that none of the articles went into the facts of the crimes with which the petitioner was charged to an extent that a prospective juror would be able to form an opinion on their basis alone. Nevertheless, the court stated that if responses from prospective jurors, at the time of impaneling a jury, indicated that people on the panel had been affected and had formed opinions or had discussed the case freely the court would consider discharging the panel and calling jurors from a different county. The court stated that it would not hesitate to do so if this condition were revealed.

The attorneys were given ample opportunity to conduct voir dire when the case was called for trial. Though most of the prospective jurors had some recollection of having read or heard about the case, no more than eight out of 56 interrogated had formed or expressed an opinion. These jurors were promptly excused by the trial judge. The motion for change of venue was not renewed during or after voir dire.

█ This court has examined the newspaper accounts of the homicide and of the various police and court activities which followed the homicide in which the name of the petitioner appeared. The news stories which concerned Jenkins appeared from August 28 through December 6, 1974. Trial began on January 23, 1975. We conclude that the trial judge properly characterized the news accounts. They did not reveal the evidence against Jenkins and primarily dealt with the various steps which were routinely taken in bringing his case to trial. Several of the news accounts stated that Jenkins had been charged with other crimes and asserted that he was linked in some way with a criminal ring. However, the stories were written as factual presentations without sensationalism. Though the charges against Jenkins were mentioned frequently in the period before the trial began, the petitioner has produced no evidence that the community was saturated with hostile and inflammatory media reports which made it impossible for him to receive a fair trial in Henderson County, Kentucky. We believe the facts disclosed by this record bring the present case within the holding of *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), rather than *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

█ Under Kentucky law a motion for a change of venue is addressed to the sound discretion of the trial court. *Hurley v. Commonwealth*, 451 S.W.2d 838 (Ky.1970). The record shows a careful consideration of the motion for change of venue and the materials filed in support of it and a sound exercise of discretion by the trial court. Although there is no claim that the jury was infected by publicity during the trial, it is noteworthy that the trial judge sequestered the jury throughout the trial and gave full and specific admonitions to the jury against reading or listening to any accounts of the trial.

## RECUSAL OF THE JUDGE

The Jenkins and Svara cases were tried before the regular judge of the Henderson Circuit Court, Honorable Carl D. Melton. Prior to assuming the position of circuit judge, Judge Melton had served first as county attorney of Henderson County, Kentucky and later as commonwealth's attorney of the district which included Hender-

son County. In these two positions he had had prior contacts with the petitioner Jenkins. In July 1961 County Attorney Melton prosecuted Jenkins as a juvenile on a charge of storehouse breaking. In September 1968 County Attorney Melton prosecuted Jenkins on the misdemeanor charge of drawing and flourishing a deadly weapon. Jenkins entered a guilty plea and received a 10-day jail sentence. In January 1970 Commonwealth's Attorney Melton prosecuted Jenkins on a charge of grand larceny. There was a hung jury. In March 1970 there was a retrial of the grand larceny charge and Jenkins was convicted. He received a three-year prison term. In February 1970 Jenkins was convicted on a charge of dwelling house breaking in Union County Circuit Court. Though Melton did not prosecute that case, as commonwealth's attorney he had presented the case to a grand jury which returned an indictment. The petitioner did not contend that Judge Melton had had any prior involvement in the case which was to be tried in January 1975 in which Jenkins was charged with murder and armed robbery.

We have found no habeas corpus case which holds that it is a denial of due process for a judge to preside over a jury trial in a criminal case where the judge, as a prosecutor, had previously been involved in proceedings against the defendant in entirely unrelated cases. Though this circuit does not appear to have considered the question, the Fifth Circuit has denied habeas corpus in at least two cases where it was contended that a constitutional violation occurred because a judge who had been involved previously in the prosecution of a defendant for unrelated matters presided at that defendant's subsequent trial. *Murphy v. Beto*, 416 F.2d 98 (5th Cir. 1969); *Goodspeed v. Beto*, 341 F.2d 908 (5th Cir. 1965), *cert. denied*, 386 U.S. 926, 87 S.Ct. 867, 17 L.Ed.2d 798 (1967).

In federal prosecutions, 28 U.S.C. § 455 requires the disqualification of a judge who has been "of counsel" or has a "substantial interest" in a case brought before him. Though the duty to vacate the bench is absolute in a situation where the judge was a United States attorney at the time when the case before him began, *United States v. Amerine*, 411 F.2d 1130 (6th Cir. 1969),[1] this rule applies only when the case before him is the same as or is related to the case which was within his jurisdiction as prosecuting attorney. It has been specifically held that a judge who as United States Attorney was "of counsel" when a defendant was tried and convicted of one charge is not disqualified from presiding at the prosecution of the same defendant for a totally unrelated offense. *Gravenmier v. United States*, 469 F.2d 66 (9th Cir. 1972).

All previous contacts between the petitioner and Judge Melton occurred between five and thirteen years before the trial of the present case. The most serious previous charge in which Judge Melton was involved as prosecutor was grand larceny, whereas the charges at the instant trial were of an entirely different magnitude. Absent some showing of hostility or prejudgment we will not assume that a state court judge would not be able to give a defendant a fair trial solely because of his earlier contacts with the defendant in prosecuting totally unrelated charges. Thus we look at the record to see if there is evidence of hostility or bias.

A careful reading of the transcripts of hearings on motions and of the trial reveals no hostility, bias or prejudgment. The claims to this effect in the brief of the petitioner-appellant are not supported when the entire record is considered. The record discloses an evenhandedness in rulings and fair treatment of all counsel. Judge Melton was particularly careful to get all of the motions and rulings on the record and there were no unreported bench conferences or proceedings in chambers. The court stated his reasons fully for each ruling of consequence and permitted defense counsel to argue motions and objections fully.

---

1. Likewise, an absolute duty has been found to exist under state statutes similar to 28 U.S.C. § 455. *See Lee v. State*, 555 S.W.2d 121, 124 (Tex.Cr.App.1977).

In answer to a direct question from the bench during oral argument in this court, counsel for petitioner stated that the proof of an unfair trial may be found in the court's overruling petitioner's motions for change of venue and severance. These rulings do not appear to have flowed from bias; instead, the record reflects an attempt by the judge to balance the competing interests of the parties, after careful consideration of arguments by counsel.

This court is unwilling to adopt a *per se* rule that a judge may never preside at a trial where he has had previous contact with the defendant as a prosecutor in totally unrelated criminal charges. In the absence of a *per se* rule, the record before us in this appeal simply does not justify a finding that the previous contacts between the judge and the petitioner deprived the petitioner of a fair trial.

## SEVERANCE

Petitioner's motion for severance was based primarily on the fact that the co-defendant Svara was relying on an "antagonistic" defense. It was brought out at the hearing on the motion for severance that Svara intended to testify that he accompanied Jenkins to the home of the victim Miller and was an "unwilling participant" in the killing. He would testify that he accompanied Jenkins because he was in fear of his life and the lives of his family members. The trial judge held that duress could be a defense for Svara to the charge of armed robbery but indicated that there is no recognized defense of duress to a charge of murder. The Commonwealth then dismissed the armed robbery charge against Svara and the court overruled the motion for severance. Counsel for Jenkins renewed the motion for severance when Svara was called as a witness and again when the Commonwealth had completed its proof.

At the trial Svara was a most important witness for the prosecution. He related in detail the events of August 23, 1974 when he and Jenkins decided late in the evening, while drinking together at a night club, to

go to a place in the county where Jenkins said a man who lived alone was reputed to keep money. Svara stated that the two men went to the Miller residence, which was in a remote area, and that he stayed in the automobile while Jenkins went to the Miller house. He described the events which occurred thereafter, including Miller's attempt to escape and Jenkins' following him into a corn field where four shots were fired. He testified that Jenkins told him he had shot Miller in the corn field.

Svara also described activities which he and Jenkins engaged in the following two days in moving Miller's body to another location in Henderson County and abandoning Miller's truck on a city street in Henderson. Svara's counsel developed the "unwilling participant" contention with leading questions which Svara answered by stating that while he was not afraid of Jenkins he was afraid of "the organization" and particularly of Richard Biggerstaff. There was an implication that Jenkins was part of the organization headed by Biggerstaff, though Svara was not permitted to testify directly to that effect. Counsel for Jenkins conducted a full cross-examination of Svara, but it was not very productive.

Jenkins argues that it was impossible for him to have a fair trial before a jury which heard this evidence from his co-defendant. The problem with this argument is that virtually the same testimony could have been given by Svara at a separate trial of Jenkins. The joinder did not permit Svara to testify to any factual matter which would have been excluded if Jenkins had been on trial alone. The charges against Jenkins and Svara are the type which ordinarily are tried together. They were indicted for the same homicide and armed robbery and virtually every witness who testified in this case would have been required to testify in both cases if they had been tried separately.

We do not believe the mere existence of antagonistic defenses requires us to grant the writ in this case. In *United States v. Johnson*, 478 F.2d 1129 (5th Cir. 1973), the court held that it was an abuse of

discretion for a district judge to deny severance when two defendants relied on antagonistic defenses. However, that case involved a federal prosecution and the application of the Federal Rules of Criminal Procedure. There was no holding that the due process clause requires a severance in every case where there are antagonistic defenses. We conclude that while a claim of due process violation based on antagonistic defenses between jointly tried defendants is cognizable in habeas corpus, in order to prevail a petitioner must show both an abuse of discretion and prejudice from denial of a severance motion. *Moore v. Cowan*, 560 F.2d 1298, 1301 (6th Cir. 1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978).

There is a factor in the present case which leads us to conclude that the state trial court did abuse its discretion in denying the motion of Jenkins for a separate trial. The unusual situation in this case arises from the role played by the attorney for the co-defendant, Svara. Though most of Svara's testimony would have been admissible in a separate trial of Jenkins, Svara's attorney could not have participated in such a trial in the way he did in the joint trial. The opening statement of Svara's attorney reinforced that of the Commonwealth's Attorney in many respects. The agreement by this attorney that his client might be called by the prosecution facilitated the presentation of the Commonwealth's case. Of course if there had been separate trials, Svara could have been called as a prosecution witness. Nevertheless, in that event his motive in accompanying Jenkins to the Miller farm would have been immaterial since he would not have been on trial. As it was, he was able to present to the jury his claim of being an "unwilling participant." Finally, in his closing argument, Svara's attorney catalogued all of the evidence which corroborated Svara's testimony. Of course, this was done for the purpose of encouraging the jury to look upon Svara as a cooperative defendant who helped authorities solve a serious crime. The necessary implication that Jenkins was not entitled to the same

consideration because of his lack of cooperation was certainly present in the closing argument.

The petitioner contends that Svara's counsel referred to the fact that Jenkins failed to take the stand. While he certainly contrasted Svara's cooperation with the attitude of Jenkins, Svara's attorney made no direct comment on the failure of Jenkins to testify. He made statements which might be construed as such comments. Assuming that comments by counsel for co-defendant on failure of a defendant to testify would be grounds for habeas corpus relief, we do not believe the record before us justifies such a result. This record certainly does not present a situation comparable to that in *DeLuna v. United States*, 308 F.2d 140 (5th Cir. 1962), where counsel for one defendant commented directly on the failure of the other defendant to testify and invited the jury to draw an inference of guilt from this fact.

To find prejudice sufficient to require habeas corpus relief where it is not claimed that a joint trial resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses (*Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970)), or the right to confrontation (*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)), we must determine from the entire record that the fundamental right to a fair trial as secured by the Fourteenth Amendment has been abridged. Though it is doubtful that Jenkins would have been convicted without the testimony of Svara, that testimony alone would not have been sufficient. The trial judge correctly instructed the jury that Svara was an accomplice and that his testimony required corroboration for a guilty verdict. The Commonwealth introduced corroborating witnesses for many of the details of Svara's testimony. These witnesses included five persons who identified the Miller truck at locations where Svara had placed the truck at approximately the same times. Another witness identified Jenkins as the person who left the Miller

truck parked across the street from her home in Henderson two days after the murder. The victim's body had been found at a location described by Svara and a witness testified to the presence of a pool of blood in the corn field where Svara said Miller was shot. In addition, a witness identified Jenkins and Svara as being together at the night spot where Svara said the plan to rob Miller was conceived. Considering the fact that Svara's testimony covered events which occurred over a period of approximately 48 hours and that the other witnesses were not together at the times of the observations which they related, it appears to us that the testimony of Svara was unusually well corroborated.

We conclude that the only possible prejudice to Jenkins by reason of being tried jointly with Svara would arise from the impact of having Svara's attorney support the Commonwealth's attorney and the testimony of Svara's reasons for accompanying Jenkins. Nevertheless, the testimony of Svara and the corroborating witnesses, which would have been admissible at a separate trial, constituted overwhelming evidence of Jenkins' guilt. Under these circumstances, any error resulting from denial of the motion for severance may be found to be harmless beyond a reasonable doubt. *Cf. Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Glinsey v. Parker*, 491 F.2d 337, 344 (6th Cir.), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2630, 41 L.Ed.2d 227 (1974). Based on a careful study of the record we cannot say that the denial of Jenkins' motion for severance was so prejudicial as to deny him the fundamental right to a fair trial.

The judgment of the district court is affirmed.