Leander Kriegg FOSTER,
# 241559, Petitioner,

v.

Pamela WITHROW, Respondent.

No. CIV.A.98–75386–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 11, 2001.

Leander Foster, Ionia, MI, Pro se.

### MEMORANDUM OPINION AND OR-DER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ROBERTS, District Judge.

### I. Introduction

Petitioner, Leander Kriegg Foster ("Petitioner"), presently confined at the Michigan Reformatory, 1342 West Main Street, Ionia, Michigan 48846, has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner attacks his conviction of first degree premeditated murder, M.C.L. § 750.316, armed robbery, M.C.L. § 750.529, and possession of a firearm during the commission of a felony. M.C.L. § 750.227b. Petitioner was sentenced to a mandatory non-paroleable sentence of life imprisonment for first degree murder, life imprisonment for armed robbery, and a mandatory consecutive two year prison term for felony firearm. For the reasons stated below, the application is denied and the matter is dismissed.

## II. Factual Background

Petitioner's convictions arise out of the murder and armed robbery of Stella Sproule. Petitioner confessed to shooting Sproule to death with a .25 caliber automatic pistol.[1] Petitioner told Lieutenant William Presley of the Detroit Police Homicide Section that he shot Sproule as part of a scheme devised by his aunt, Annie Cole. Petitioner was sixteen years old at the time of the killing. He would be seventeen less than a month after the killing. Petitioner said Annie Cole promised him and his friend Steward McCoy five thousand dollars each if they would kill Stella Sproule. Petitioner stated that Annie Cole wanted Stella Sproule murdered because Sproule had pressed criminal charges against her.

Petitioner and McCoy tricked Sproule into getting into a car with them. After driving around for over half an hour looking for a suitably isolated location for the killing, Petitioner and McCoy forced Sproule to enter an abandoned building. Petitioner and McCoy forced Sproule to take off her clothes except for her bra and underpants, so they could be certain that he had no identification on her. After checking for identification, McCoy and Petitioner told Sproule to put her clothes back on. Petitioner then told Stella Sproule to walk up next to wall and face it. Petitioner asked McCoy what number Sproule should count to. McCoy said ten. When Stella Sproule counted "one," Petitioner shot her in the head. Sproule fell to the floor and Petitioner shot her two more times. Petitioner and McCoy took some identification and some money from Stella Sproule's purse. McCoy spent the money. Petitioner took Stella Sproule's ID, social security card, and City Bank Card.

Petitioner later called the police and told them "the location of the victim's body. Although defendant [Petitioner] informed them that he had not been inside of the location where the body was found, he gave a detailed description of the body, the wounds and the clothing worn by the deceased." *People v. Foster*, Michigan Court of Appeals Docket No. 184162 (July 22, 1997) at 1.

Steward McCoy testified that Petitioner ordered Stella Sproule to face the wall inside an abandoned building, told her to start counting, and shot her in the head at point blank range "[w]hen she got to one." Tr. Vol. XII at 1551. McCoy further testified that Petitioner then shot Stella Sproule two more times. *Id.* at 1552. McCoy denied having any prior knowledge that Petitioner was armed, denied knowing that Petitioner intended to shoot and kill Stella Sproule, and denied taking any property from the victim.

Petitioner did not testify on his own behalf, or call any other defense witnesses. Petitioner contended through counsel that his aunt Annie Cole coerced him into killing Stella Sproule and that he was provoked to kill Stella Sproule because she was pressing criminal charges against his aunt which would lead to her imprisonment.[2]

---

1. Petitioner's confession was admitted at his trial. Petitioner's confession and the circumstances surrounding to it are set forth in the trial testimony of Lieutenant William Presley. Trial Transcript ("Tr.") Vol. VIII at 873–923.

2. Petitioner has pointed out that Respondent's Answer includes a recitation of facts which refer to the facts of another case, not his. This section includes a reference to presenta-

tion of an intoxication defense which did not happen at Petitioner's trial, references to witnesses such as a Caprice Johnson who did not testify at Petitioner's trial, and references to incidents such as perhaps forty gunshots from a rifle, which had no part in the crime of which Petitioner was convicted. See Respondent's Answer at 17–19. Petitioner has requested that the Court note that these matters

## III. Procedural History

Petitioner was convicted by a jury of first-degree premeditated murder, M.C.L. § 750.316(1)(a), felony-murder, M.C.L. § 750.316(1)(b), armed robbery, M.C.L. § 750.529, and felony firearm, M.C.L. § 750.227b.

Petitioner appealed as of right to the Michigan Court of Appeals, raising the following claims:

I. Defendant was deprived of his state and federal protections from double jeopardy when he was convicted of and sentenced on both premeditated murder and felony murder, based on a single killing, where he was convicted of and sentenced on both felony murder and the underlying felony or armed robbery.

II. Because defendant's confession was the fruit of a warrantless search which was not supported by probable cause, the confession should have been suppressed. Trial counsel's failure to seek suppression of defendant's confession on this basis was ineffective assistance of counsel.

III. The trial judge deprived defendant of his state and federal constitutional rights to a fair trial by refusing to completely sever his trial from that of the co-defendants who were simultaneously tried with him.

IV. Defendant was denied his state and federal constitutional due process rights to a fair trial by the admission of irrelevant evidence which implicated a co-defendant who was tried by a separate jury

V. The trial judge deprived defendant of his constitutional right to a fair jury trial by failing to properly instruct the jurors on the theory of the defense.

VI. Defendant is entitled to resentencing because his sentence to mandatory nonparoleable life imprisonment violates this state's constitutional prohibition against cruel and unusual punishment.

VII. The sentencing judge abused her discretion by sentencing defendant, who was only sixteen at the time of the offense, was a first offender, and who participated in the offense only at the urging of his adult aunt, to eternal incarceration in the adult penal system.

During the pendency of Petitioner's appeal of right, defense counsel filed a motion to remand to seek a new trial. In that motion and supporting brief, Petitioner reiterated his claim that his confession was the fruit of an illegal search and also claimed that he did not understand the rights he waived when he gave his confession. Petitioner also claimed that failing to challenge the admissibility of his confession on this basis was ineffective assistance of counsel. In an order entered on May 17, 1996, Petitioner's motion to remand was denied by the Michigan Court of Appeals. On January 31, 1997, the Michigan Supreme Court denied Petitioner's application for leave to appeal the denial of his motion to remand.

On July 22, 1997, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences, except for his conviction and sentence for felony murder, which was

do not pertain to his trial and the Court hereby grants that request. The Court also notes that the Answer incorrectly refers to Petitioner as "she" in a few places. The Court further notes that Petitioner states that he was sentenced by the trial judge, Judge Beverley A. Jasper of the Detroit Recorder's Court for the City of Detroit, not Judge Mi-

chael F. Sapala, as indicated on the first page of the sentencing transcript. This last claim is supported by the record, which indicates that on all fifteen volumes of trial transcripts that Honorable Beverley A. Jasper was the presiding judge, together with the judge's reference in the sentencing transcript to having heard the trial testimony.

vacated on double jeopardy grounds. *People v. Foster*, Michigan Court of Appeals Docket No. 184162 (July 22, 1997). Petitioner sought leave to appeal the denial of his unsuccessful issues in the Michigan Supreme Court. His application was denied on December 30, 1997.

Thereafter, on or about December 30, 1998, Petitioner filed the instant application for a writ of habeas corpus presenting seven claims, which Petitioner phrased as follows:

I. Petitioner's Fifth Amendment right under the United States Constitution was violated where his confession was the fruit of a warrantless arrest which was not supported by probable cause, [and] the confession should have been suppressed.

II. Petitioner's Sixth Amendment right under the United States Constitution was violated where his counsel was aware that Petitioner's confession resulted from an illegal arrest, [and] he performed ineffectively by failing to challenge the confession's admissibility on this ground.

III. Petitioner's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when the trial judge refused to completely sever Petitioner's trial from that of the codefendants who were simultaneously tried with him.

IV. Petitioner's Fourteenth Amendment right under the United States Constitution was violated by the admission of irrelevant evidence which implicated a codefendant who was tried by a separate jury.

V. Petitioner's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when the trial judge failed to properly instruct the jurors on the theory of the defense.

VI. Petitioner's Eighth Amendment right under the United States Constitution was violated when he was sentenced to mandatory nonparoleable life imprisonment.

VII. Petitioner's Fourteenth Amendment right under the United States Constitution were violated when the sentencing judge abused her discretion in sentencing Petitioner, who was; only sixteen at the time of the offense, and who participated in the offense only at the urging of his adult aunt, to eternal incarceration in the adult penal system.

## IV. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996)("AEDPA" or "the Act"), govern this case because petitioner filed his habeas corpus petition after the effective date of the Act. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

As amended, 28 U.S.C. § 2254(d) provides that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The United States Supreme Court has recently addressed the proper interpretation of the amendments to the habeas cor-

pus statute concerning entitlement to relief. The Supreme Court has stated that "[i]n sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). The Court summarized the standard of review as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13, 120 S.Ct. at 1523.

■ "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521. The reviewing court should not inquire whether all reasonable jurists would agree that the state court's decision was reasonable or unreasonable. The reviewing court must be aware that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522. However, a postulated complete unanimity of the entire federal judiciary that a state court decision is unreasonable is not required before the reviewing court may conclude that the decision in question includes at least one dispositive unreasonable application of clearly established federal law.

■ Where constitutional trial error has been shown and the reviewing court concludes that the error had a substantial and injurious effect or influence in determining the jury's verdict, a state court ruling finding such error harmless beyond a reasonable doubt is outside the realm of plausible, credible outcomes and the petitioner is entitled to habeas relief. *Barker v. Yukins*, 199 F.3d 867 (6th Cir.1999), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2658, 147 L.Ed.2d 273 (2000). "[A] state court's application of federal law is unreasonable and a writ may issue only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible, credible outcomes." *Barker*, 199 F.3d at 871. "When a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ A federal court reviewing a habeas petition must apply the presumption of correctness to evidence-supported factual

determinations made by a state court. *West v. Seabold,* 73 F.3d 81, 83 (6th Cir. 1996); *cert den.* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996); *Lundy v. Campbell,* 888 F.2d 467, 469 (6th Cir.1989), *cert. denied,* 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990). This presumption may only be overcome by the presentation of clear and convincing evidence by the petitioner. 28 U.S.C. § 2254(e)(1).

## V. Discussion

### A. Exhaustion of state court remedies

▇▇▇▇ Respondent argues that Petitioner has failed to exhaust all of his state remedies. It is well settled that a prisoner filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.1993). State prisoners "must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728; *see also Rust,* 17 F.3d at 160 (exhaustion requirement is satisfied when the state's highest court has been given a full and fair opportunity to rule on the petitioner's claims). A petitioner must present each ground to both appellate courts, even if the

state's highest court only provides discretionary appellate review. *O'Sullivan,* 526 U.S. at 845–47, 119 S.Ct. 1728; *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir.1990); *Moralez v. Thiede,* 828 F.Supp. 492, 494 n. 1 (E.D.Mich.1993). Generally, a federal district court should dismiss a petition for a writ of habeas corpus that contains unexhausted claims. *Rose v. Lundy,* 455 U.S. 509, 510, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Rust,* 17 F.3d at 160.

After review of the state court record, this Court concludes that, considering all of the issues raised in Petitioner's appellate brief and motion to remand in the Michigan Court of Appeals, and his subsequent attempts to appeal the denial of these claims in the Michigan Supreme Court, Petitioner has properly presented all of the federal constitutional issues raised in the present petition to the Michigan appellate courts for decision. Therefore, the petition is properly before this Court and this Court shall address the merits of the questions presented.

### B. Claim that Petitioner's confession should have been suppressed as a product of an illegal arrest and related ineffective assistance of counsel claim

Petitioner contends that his confession should have been suppressed as the product of an illegal, warrantless search and that, consequently, it was ineffective assistance of counsel to fail to seek suppression of his confession on this ground. Respondent asserts that these claims lack merit. Respondent contends that Petitioner's arrest was supported by probable cause and that, consequently, his confession was not suppressible as the product of an illegal arrest and it was not ineffective assistance of counsel not to challenge admission of his confession on this basis.[3]

---

**3.** Respondent does not argue that Petitioner's claim under *Brown v. Illinois* and its proge-

ny——that his confession is an inadmissible fruit of an illegal arrest——is barred from ha-

The "fruits of the poisonous tree" doctrine provides that evidence obtained following or during illegal police conduct—e.g., confessions obtained during illegal custodial interrogation or consents obtained following an illegal entry—are inadmissible at trial if the statements or other evidence were obtained as a result of the prior illegality and not as a result of the accused's exercise of free will. *Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975) The evidence is excluded as "tainted fruit" of the "poisonous tree" of the original unconstitutional conduct.[4]

To prevail on a claim that a confession is the product of an illegal arrest, the petitioner must first show that his arrest was, in fact, illegal. It is undisputed that Petitioner was subjected to a warrantless arrest. Nonetheless, as explained in *United States v. Strickland*, 144 F.3d 412, 413 (6th Cir.1998), Petitioner's warrantless arrest was not illegal if the arresting officers had probable cause:

> The Fourth Amendment provides that '[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause....' U.S. Const. amend. IV. An 'arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.' *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988).

beas review under the doctrine of *Stone v. Powell*, 428 U.S. 465, 495, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), because this claim requires a successful Fourth Amendment claim as its basis and relitigation of Fourth Amendment claims in habeas is barred by *Stone*. Such an argument would have doubtful merit. *See, Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). *Kimmelman* held that defendants may properly base ineffective assistance of counsel claims in a habeas corpus action on the assertion that their attorney failed properly to litigate a Fourth Amendment claim. The Court necessarily rejected the idea that there is a tight linkage between the holding of *Stone v. Powell* rejecting the litigation of Fourth Amendment claims for habeas purposes unless the state had denied a full and fair opportunity to litigate those claims, and a Sixth Amendment claim of ineffective assistance of counsel based on a Fourth Amendment problem. Similarly, this Court presumes that a petitioner may present a *Brown v. Illinois* type challenge to the admissibility of a confession under the Fifth and Fourteenth Amendments, despite the Fourth Amendment component of this type of claim. *But see, Bell v. Lynbaugh*, 663 F.Supp. 405, 412 (E.D.Tex.1987)(holding that doctrine of *Stone v. Powell* bars such challenges to the admission of a confession in

habeas, where the underlying Fourth Amendment claim was fully and fairly litigated and decided against the petitioner in state court).

4. Where a court finds that an illegal arrest was followed by the discovery and seizure of evidence, a court must further determine "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint,' " *Segura*, 468 U.S. at 805, 104 S.Ct. at 3385 (quoting *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)). A broad "but for" relationship is not the standard for dissipation, *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417; *Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); rather, courts look for a "close causal connection" between the illegality and the evidence or consent obtained, *Dunaway*, 442 U.S. at 218, 99 S.Ct. at 2259. The taint of illegality can be removed if the evidence is obtained from an independent source unrelated to the illegality, if the evidence would have been inevitably discovered through "clean" sources, *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), or if circumstances demonstrate that the taint is sufficiently attenuated, *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62.

The *Strickland* court went on to explain what is required to establish probable cause:

> There is, of course, a requirement that the officers be able to articulate concrete facts from which they infer a probability that illegality has occurred. As we have consistently emphasized, however, while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt. *See, e.g., United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990).

> The real question, then, is this: at what point does a body of evidence amassed by a police officer against a particular suspect cross the line from merely raising a suspicion to establishing probable cause?

*Id.*

 In the present case, the Michigan Court of Appeals found that no warrant for Petitioner's arrest was required because there was probable cause to arrest him. The court summarized the factual basis which gave the police probable cause to arrest Petitioner as follows:

> Police knew that defendant had called authorities and given the location of the victim's body. Although defendant informed them that he had not been inside of the location where the body was found, he gave a detailed description of the body, the wounds and the clothing worn by the deceased. All of this evidence provided probable cause to arrest defendant.

*People v. Foster,* Michigan Court of Appeals Docket No. 184162 at 1.[5]

The Court agrees that the detailed information Petition provided to the officers, coupled with his apparent deception about whether he had been in the building, gave the officers probable cause to believe that Petitioner had participated in the murder of Stella Sproule. Consequently, Petitioner's claim that his confession was an inadmissible fruit of an illegal arrest is without merit and the Michigan Court of Appeals decision to that effect was an objectively reasonable application of controlling federal constitutional law.

Petitioner additionally contends that his attorney provided ineffective assistance of counsel by failing to seek suppression of his confession as the fruit of an illegal arrest. This Court disagrees. In order to establish ineffective assistance of counsel, Petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the present case, there is no reasonable probability that a challenge to the admissibility of his confession would have succeeded. Therefore, Petitioner cannot show that he was prejudiced by counsel's failure to challenge the admission of his confession, and his claim of ineffective assistance of counsel must fail.

**C. Claim that denial of severance deprived Petitioner of a fair trial**

 Petitioner was tried with his co-defendants at a joint trial. Each of the three co-defendants had a separate jury. Petitioner claims that he is entitled to habeas corpus relief because the trial court erred in denying his motions for complete severance of his trial from those of his co-defendants. The Michigan Court of Appeals found that Petitioner failed to show that he was prejudiced by the joint trial

---

**5.** Lieutenant William Presley testified concerning these matters at Petitioner's Preliminary Examination. See, Preliminary Examination Transcript ("PET") at 92–93.

procedure because each defendant's case was decided by a separate jury and no evidence was admitted that could not have been admitted at a separate trial.

Petitioner argues that the defenses of co-defendants Steward McCoy and Annie Cole were antagonistic to his own defense of lack of premeditation and provocation. McCoy testified that he had no prior knowledge that Petitioner intended to harm Stella Sproule. McCoy also testified that Petitioner shot Sproule to death, execution-style, after taking her against her will to a secret location. Cole testified that she had no involvement whatsoever in the killing of Stella Sproule, or in any planning of the killing. Cole further testified that her nephew Leander Foster gave her Stella Sproule's driver's license which she used to obtain a J.C. Penney's charge card and make purchases. Cole testified that she was unaware of Stella Sproule's death when she made these fraudulent purchases. Cole further testified that Petitioner tried to blackmail her by threatening to tell the police about her use of Stella Sproule's identity at Penney's and that she (Cole) had planned the death of Stella Sproule. In addition to arguing that the defenses were antagonistic, Petitioner argues that the trials should have been severed because co-defendant McCoy's statements to police implicated him. Notwithstanding these arguments, the Court finds that the trial court's failure to afford Petitioner a severed trial does not warrant habeas relief.

■ It must first be remembered that joinder is the preferred course, creating a presumption in favor of joinder which must be overcome by the party seeking severance. In *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the United States Supreme Court stated that joint trials "play a vital role in the criminal justice system." The Court concluded that requiring separate trials in all multi-defendant cases would impair both the efficiency and fairness of the criminal justice system where the same evidence is presented and victims and other witnesses were required to appear to testify repeatedly. Further, the Court found that joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessments of relative culpability. *Richardson v. Marsh*, 481 U.S. at 209–10, 107 S.Ct. 1702.

■ The Sixth Circuit Court of Appeals has held that "while a claim of due process violation based on antagonistic defenses between jointly tried defendants is cognizable in habeas corpus, in order to prevail, a petitioner must show both an abuse of discretion and prejudice from denial of a severance motion." *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979). "To find prejudice sufficient to require habeas corpus relief where it is not claimed that a joint trial resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses ... or the right to confrontation ..., we must determine from the entire record that the fundamental right to a fair trial as secured by the Fourteenth Amendment has been abridged." *Id.*

The Michigan Court of Appeals held that the trial court did not err in denying Petitioner's motions for a separate trial. It reasoned:

Defendant has not shown that there was prejudice to his substantial rights because of the multi-jury procedure. There is no indication that this procedure restricted defendant in presenting his defense. Further, no evidence was admitted that could not have been admitted in a separate trial.

*People v. Foster,* Docket No. 184162, p. 1–2 (Mich.App., July 22, 1997) (citation omitted).

This Court concludes that Petitioner has not established that the state court's determination was contrary to or an unreasonable application of Supreme Court precedent. In light of the fact that McCoy's and Cole's testimony could have been presented at Petitioner's trial even if it were severed, Petitioner suffered no prejudice from having the joint trial. Further, the simple fact that McCoy's statements implicated Petitioner did not require a separate trial because Petitioner had the opportunity to cross-examine McCoy at trial. *But cf. Bruton v. U.S.,* 391 U.S. 123, 135–36, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)(holding that a defendant is deprived of his Sixth Amendment right of confrontation when a non-testifying co-defendant's facially incriminating statement is introduced at their joint trial, even when the jury is instructed to consider the statement only against the co-defendant.).

▆ Furthermore, any error associated with the holding of a joint trial in this case was harmless. In habeas corpus cases brought pursuant to § 2254, the standard governing harmless error for trial-type constitutional errors is the one articulated in *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *See Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding that *Kotteakos* applies in § 2254 habeas cases to claims regarding trial errors). If erroneously denying Petitioner's motion for a separate trial "had substantial and injurious effect or influence in determining the jury's verdict," the error is not harmless. *Kotteakos,* 328 U.S. at 776, 66 S.Ct. 1239. In the present case,

the evidence of Petitioner's guilt was overwhelming, and included a properly admitted confession. Any error which may have resulted from holding the joint trial before three juries was minimal and therefore had no substantial and injurious influence on the verdict.

Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

## D. Evidentiary claims

Petitioner contends that admission of evidence relevant only to the guilt of Annie Cole prejudiced him. This challenged evidence included evidence that Cole may have sought to assume the identity of Stella Sproule to evade her prior legal problems and to make fraudulent credit purchases in Sproule's name. Evidence was admitted that Annie Cole (while identifying herself as Betty Cole) told the police that the dead woman was Annie Cole. Cole's criminal record was also admitted into evidence. The Michigan Court of Appeals held that the trial court did not abuse its discretion in admitting this evidence because it was relevant and not unduly prejudicial under Michigan law.

▆ The Court agrees that the evidence was admissible under Michigan law.[6] The evidence regarding Cole's attempt to assume Sproule's identity served to explain Petitioner's motive for killing Sproule; Cole had promised Petitioner and McCoy money to do so. Furthermore, it is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62,

---

6. *See* M.R.E. 401, defining relevant evidence, and M.R.E. 402, stating that relevant evidence is admissible.

67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.1979). Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir.1994).

In this case, Petitioner has failed to show that the admission of the evidence at issue deprived him of a fair trial and he is, thus, not entitled to habeas relief on this claim.

### E. Jury Instruction Claim

Petitioner contends that he was denied a fair trial because the trial judge refused to instruct the jury on the law of voluntary manslaughter. Defense counsel argued that Petitioner did not premeditate the killing of Stella Sproule. Rather, counsel argued, Petitioner acted in the heat of passion after being provoked by the knowledge that Stella Sproule planned to press charges against his beloved aunt Annie Cole. Nevertheless, the trial court denied the request for voluntary manslaughter instructions because such instructions were not warranted by the evidence presented during trial.

The Court of Appeals for the Sixth Circuit has held that "[g]enerally, a defendant is entitled to jury instructions on defense theories that are supported by law and raised by the evidence presented." *Williams v. Kentucky*, 124 F.3d 201, 204 (6th Cir.1997). A requested instruction must be supported by sufficient evidence. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v. Duran*, 59 F.3d 938 (9th Cir. 1995).

In this case, the trial court held that the instruction of voluntary manslaughter was not supported by the evidence. A charge of voluntary manslaughter requires the "... act of killing, though intentional, be committed under the influence of passion, or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool...." CJI2d 16.8; *Maher v. People*, 10 Mich. 212, 218–219 (1862). *See also, People v. Townes*, 391 Mich. 578, 589–90, 218 N.W.2d 136 (1974)(same); *People v. Knott*, 59 Mich. App. 105, 114–15, 228 N.W.2d 838 (1975)(same); *People v. Morrin*, 31 Mich. App. 301, 311 n. 7, 187 N.W.2d 434 (1971)(to mitigate a killing which would otherwise be murder to manslaughter generally requires "commission of the killing in a sudden heat of passion caused by adequate legal provocation."). When refusing to offer the voluntary manslaughter instruction, the trial court reasoned that the evidence that Petitioner tricked Stella Sproule into getting into the car with him, drove her around town for about forty minutes looking for an isolated place to kill her, told her to disrobe before killing her to insure that she had no identification on her, told her to dress again, and start counting, and then shot her three times did not provide adequate evidentiary support for a jury instruction on voluntary manslaughter. Tr. Vol. XVI at 1683–96. The Michigan Court of Appeals agreed, and so does this Court.

Consequently, Petitioner's challenge to the trial court's refusal to give the voluntary manslaughter instruction lacks merit and is denied.

### F. Sentencing claims

Petitioner raises two challenges to his sentence of life imprisonment without possibility of parole. First, Petitioner con-

tends that sentencing him to life imprisonment without possibility of parole for a murder he committed when he was a sixteen year old juvenile is cruel and unusual punishment prohibited by the Eighth Amendment. Second, Petitioner contends that the sentencing judge abused her discretion in deciding to sentence him as an adult for a crime committed when he was a juvenile.

Petitioner was only about one week shy of his seventeenth birthday when he murdered Stella Sproule on May 3, 1994. Consequently, he was still a juvenile under Michigan law at the time of the killing. M.C.L. § 712A.1(1)(c); M.C.L. § 764.1f(1). Petitioner and his co-defendants were tried for this crime in September of 1994. Petitioner was tried as an adult and convicted of first degree murder, armed robbery, felony firearm, and felony murder. (As noted, Petitioner's felony murder conviction was subsequently vacated on double jeopardy grounds.) Under the sentencing provisions in effect at the time, the trial judge was required to hold a hearing and make a discretionary determination whether to sentence Petitioner as a juvenile or as an adult. *People v. Conat,* 238 Mich.App. 134, 140–42, 605 N.W.2d 49, leave to appeal denied, 461 Mich. 1013, 622 N.W.2d 521 (2000).

The hearing was held and the trial judge decided that Petitioner should be sentenced as an adult. Sentencing Tr. dated February 2, 1995 at 19–23. In Michigan, the mandatory adult sentence for first degree murder is life imprisonment without possibility of parole. M.C.L. § 750.316; *People v. Fernandez,* 427 Mich. 321, 398 N.W.2d 311 (1986); *People v. Jahner,* 433 Mich. 490, 446 N.W.2d 151 (1989). Consequently, after finding that Petitioner should be sentenced as an adult, the trial judge had no discretion to sentence Petitioner to anything less than non-paroleable life imprisonment for first degree murder. Therefore, Petitioner was sentenced to concurrent terms of natural life imprisonment for first degree murder and life imprisonment for armed robbery and a consecutive two year term for felony firearm.

■ The Eighth Amendment has two possible applications in the present case. A punishment is unconstitutional if the "evolving standards of decency that mark the progress of a maturing society" soundly reject it. *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (Opinion of Warren, C.J.). The Eighth Amendment also bars, under certain circumstances, punishments that are grossly disproportionate to the crime being punished. *See Harmelin v. Michigan,* 501 U.S. 957, 997–98, 111 S.Ct. 2680, 2702–03, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring); *United States v. Bland,* 961 F.2d 123, 128–29 (9th Cir.), cert. denied, 506 U.S. 858, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992). Justice Kennedy's concurrence in *Harmelin* was holding of the Court.[7]

To establish that evolving standards of decency preclude his punishment, Petition-

---

**7.** In the *Harmelin* decision, Justice Kennedy, joined by Justices O'Connor and Souter, wrote separately to argue for the existence of a narrow proportionality guarantee. Seven members of the *Harmelin* court supported some Eighth Amendment guarantee against disproportionate punishment. However, only the four dissenters argued for the continued application of all three prongs of the test set forth in *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Five Justices rejected the continued application of all three factors from *Solem.* The controlling position is the one "taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Consequently, Justice Kennedy's opinion setting forth an Eighth Amendment guarantee against grossly disproportionate punishments, which both retains proportionality and limits *Solem* controls.

er bears the "heavy burden," *Stanford v. Kentucky,* 492 U.S. 361, 373, 109 S.Ct. 2969, 2977, 106 L.Ed.2d 306 (1989), of showing that our culture and laws emphatically and nearly universally reject it. *See id.* at 369–71, 109 S.Ct. at 2974–76. The most important indicators of the nation's penal sentiments are the enactments of its elected legislatures. *See id.* at 370, 109 S.Ct. at 2975.

At very least, Petitioner bears the burden of proving a strong legislative consensus against imposing mandatory life without parole on offenders who commit their crimes before the age of seventeen. Petitioner can not sustain this burden. There are at least twenty-one states that impose mandatory life without parole on sixteen year-old offenders. Whatever degree of consensus might be necessary before this Court could conclude that a punishment is nearly universally rejected, this case clearly falls short. *See Stanford,* 492 U.S. at 370–71, 109 S.Ct. at 2975–76 (no consensus where majority of states imposing punishment allowed it in defendant's circumstances).

Further, in *Stanford,* the United States Supreme Court ruled that imposition of capital punishment for a crime committed at sixteen or seventeen years of age did not violate American evolving standards of decency and thus did not constitute cruel and unusual punishment under the Eighth Amendment. *Stanford,* 492 U.S. at 380, 109 S.Ct. 2969. Therefore, *a fortiori,* imposition of the lesser penalty of life imprisonment without possibility of parole for first degree murder will not violate the Eighth Amendment due to violating evolving standards of decency.

 "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F.3d 60, 62 (6th Cir.1995)(quoting *United*

*States v. Williams,* 15 F.3d 1356, 1364 (6th Cir.1994)). An otherwise valid, if severe, punishment may nonetheless be unconstitutional when paired with a sufficiently minor crime. *See Harmelin,* 501 U.S. at 996–98, 111 S.Ct. at 2702–03 (Kennedy, J., concurring). Disproportion analysis, however, is strictly limited; the reviewing court should conduct a detailed analysis only in the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. at 2707 (Kennedy, J., concurring).

 Petitioner cites no authority for the proposition that life imprisonment without possibility of parole is grossly disproportionate to the crime of first degree murder. The United States Supreme Court has declared that life imprisonment without possibility of parole ("LWOP") for possession of 24 ounces of cocaine raises no inference of gross disproportionality. *See id.* at 1004–05, 111 S.Ct. at 2706–07 (Kennedy, J., concurring). *A fortiori,* it would raise none here. *See also Solem v. Helm,* 463 U.S. 277, 290 n. 15, 103 S.Ct. 3001, 3009 n. 15, 77 L.Ed.2d 637 (1983) ("no sentence of imprisonment would be disproportionate" to felony murder).

Further, several Federal Courts of Appeals have ruled that a mandatory sentence of life imprisonment without possibility of parole is not disproportionate to the crime of single or multiple counts of first degree murder committed by a juvenile. *Harris v. Wright,* 93 F.3d 581, 584–85 (9th Cir.1996)(murder of one victim by 15-year-old); *Rice v. Cooper,* 148 F.3d 747, 751–52 (7th Cir.1998)(murder of four victims by illiterate and mildly retarded 16-year-old); *Rodriguez v. Peters,* 63 F.3d 546, 566–68 (7th Cir.1995)(murder of two

victims by 15–year–old).[8] Thus, neither the length of Petitioner's sentence, nor its mandatory nature renders it unconstitutional. The Sixth Circuit Court of Appeals has stated that "there is no requirement of strict proportionality; the eighth amendment is offended only by an extreme disparity between crime and sentence." *U.S. v. Hopper,* 941 F.2d 419, 422 (1991). This Court concludes that Petitioner has not shown that his sentence is grossly disproportionate to his crime.

"A sentence of natural life in prison (that is, imprisonment till [Petitioner] dies or his sentence is commuted, because there is neither a term of years nor the possibility of parole) is exceptionally severe when the defendant is a minor" and may have been induced to commit this outrageous, cold-blooded murder by an adult relative. *Rice,* 148 F.3d at 752. However, this Court "cannot find any basis in decisions interpreting the Eighth Amendment, or in any other source of guidance to the meaning of 'cruel and unusual punishments,' for concluding that the sentence in this case is unconstitutionally severe." *Id.*

This Court further notes that habeas corpus relief is available only where the petitioner is in custody under a judgment or decision that is contrary to or an unreasonable application of controlling federal constitutional law as established by the Supreme Court. This Court is not persuaded that the Michigan Court of Appeals decision upholding Petitioner's sentence of life without possibility of parole is contrary to or an unreasonable application of federal constitutional law. Therefore, Petitioner's challenge to his sentence as violating the Eighth Amendment prohibition against grossly disproportionate sentencing is denied.

■ Petitioner also argues that his sentencing as an adult constitutes an abuse of discretion so arbitrary and capricious as to deny him due process of law. This claim also lacks merit. Petitioner must show that the sentence imposed was wholly devoid of discretion or amounted to an arbitrary or capricious use of discretion or, in the alternative, that the sentence constitutes cruel and unusual punishment to obtain federal habeas relief. *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *Haynes v. Butler,* 825 F.2d 921, 923 (5th Cir.1987).

■ The United States Supreme Court has held that a state court must follow constitutionally adequate procedures when making factual and legal determinations when those determinations result in statutorily specified adverse consequences for a juvenile. A juvenile may not be sentenced as an adult after a finding of guilt in juvenile court where procedures are much less formal, less reliable, and constitutionally less protective of the defendant's rights than the procedures of adult court. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Petitioner was tried as an adult, however. Consequently, he does not contend that he has been deprived of due process because of constitutionally deficient factfinding.

■ Rather, Petitioner contends that the trial judge's decision to sentence him as an adult was so arbitrary and capricious as to deny him to due process of law. Review of the record does not support this

---

8. "Despite the fact LWOP is second only to the death penalty in terms of its severity, Eighth Amendment proportionality challenges brought by juveniles against such sentences have met with limited success in state courts, and no success in the federal system." Wayne A. Logan, *Proportionality and Punishment: Imposing Life Without Parole On Juveniles,* 33 Wake Forest L.Rev. 681, 684 (1998).

claim. The trial judge stated on the record that the recommendations of the Probation Department and the Department of Social Services were that Petitioner be sentenced as an adult. Sentence Tr. at 21–22. The psychiatric clinic, while not requested to make a specific recommendation, expressed concern that Petitioner could not be successfully treated as a juvenile. *Id.* Thus, the judge considered these professional opinions in reaching her decision. The trial judge also made reference to the facts of the case. The facts of the case showed that Petitioner had committed premeditated murder for profit, not a crime of passion. Further, Petitioner was almost seventeen, the legal age of adult criminal responsibility in Michigan, when he murdered Stella Sproule. To the extent that it was appropriate to consider Petitioner's age in making the decision whether to sentence him as an adult, the fact that he was almost seventeen when he killed Stella Sproule supports the decision to sentence him as an adult. *Hawkins v. Hargett,* 200 F.3d 1279, 1283 (10th Cir.1999)(finding that although offender's age is a relevant factor in a proportionality analysis, sentences totaling 100 consecutive years for home burglary, forcible sodomy, rape, and robbery were not unconstitutionally disproportionate under the Eighth Amendment, although defendant was only 13 at the time of the offenses). Consequently, this Court concludes that Petitioner's claim that the trial judge abused her discretion in sentencing him as an adult lacks merit. Petitioner has not shown that the Michigan Court of Appeals decision denying this claim is an unreasonable application of or contrary to federal constitutional law. Accordingly, Petitioner's challenges to his sentence are denied.

## VI. Conclusion

This Court shall deny the petition for a writ of habeas corpus because the Court is not persuaded that Petitioner's convictions or sentences are based on a decision that is contrary to, or an unreasonable application of, controlling federal constitutional law, or an unreasonable determination of the facts. This Court finds that Petitioner's Eighth Amendment challenge to his sentence to a non-paroleable life sentence for a murder committed as a juvenile is " 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel,* 529 U.S. 473, 483 (2000)(quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)), 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542. *See, Harris,* 93 F.3d at 586–87 (Pregerson, J., dissenting)(finding that statute authorizing petitioner's LWOP sentence for aggravated murder was "unconstitutionally ambiguous, because it does not evince the legislature's clear intent to impose a mandatory sentence of life without parole on juveniles under the age of 16."). Therefore, this Court shall grant Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** a certificate of appealability is **GRANTED.**